NOTICE: Under Supreme Court Rule 367 a party has 21 days after the

filing of the opinion to request a rehearing. Also, opinions are

subject to modification, correction or withdrawal at anytime prior

to issuance of the mandate by the Clerk of the Court. Therefore,

because the following slip opinion is being made available prior to

the Court's final action in this matter, it cannot be considered

the final decision of the Court. The official copy of the following

opinion will be published by the Supreme Court's Reporter of

Decisions in the Official Reports advance sheets following final

action by the Court.

                                    

                Docket No. 79589--Agenda 11--March 1996.

     KAREN CONNICK et al., Appellees, v. SUZUKI MOTOR COMPANY, LTD.,

                           et al., Appellants.

                     Opinion filed October 18, 1996.

     JUSTICE HEIPLE delivered the opinion of the court:

     Plaintiffs, each of whom had purchased a new Suzuki Samurai

sport utility vehicle, filed a class action lawsuit in the circuit

court of Cook County against defendants Suzuki Motor Company and

American Suzuki Motor Corporation (hereinafter referred to

collectively as Suzuki). Plaintiffs alleged that the Samurai was

unsafe due to its excessive roll-over risk and sought damages from

Suzuki for breach of warranty, common law fraud, and violation of

the Illinois and Pennsylvania consumer fraud statutes. The circuit

court dismissed the entire complaint for failure to state a claim

for which relief could be granted. The appellate court affirmed in

part and reversed in part (No. 1--94--1275 (unpublished order under

Supreme Court Rule 23)), reinstating the counts alleging breach of

express and implied warranty under the Uniform Commercial Code

(UCC) (810 ILCS 5/1--101 (West 1994)) and the count alleging

violation of the Illinois Consumer Fraud and Deceptive Business

Practices Act (Illinois Consumer Fraud Act) (815 ILCS 505/1 et seq.

(West 1994)). The appellate court affirmed the dismissal of the

remaining counts. We allowed Suzuki's petition for leave to appeal

(155 Ill. 2d R. 315) and, for the reasons that follow, we reverse

the appellate court's decision to reinstate the UCC warranty

counts, affirm the dismissal of the common law fraud count, and

affirm the reinstatement of the Illinois consumer fraud count.

                                   FACTS

     The named plaintiffs of this class action, residents of

Illinois, Pennsylvania and New Jersey, each purchased a new Suzuki

Samurai from an authorized Suzuki dealer. Some time after their

purchases, Consumers Union, a consumer watchdog organization, gave

the Samurai a "not acceptable" rating. According to Consumers

Union, the Samurai was unsafe because it had an excessive risk of

rolling over during sharp turns and accident avoidance maneuvers.

Subsequently, plaintiffs filed the instant complaint against

Suzuki. The class action, filed on behalf of all persons in the

United States who purchased or leased a Samurai from Suzuki or an

authorized Suzuki dealer, alleged that the Samurai's risk of roll

over was due to a defect in either design or production.

Significantly, plaintiffs did not allege that they had ever

suffered a roll-over accident in a Samurai. Rather, they sought

compensation for the diminution in the vehicles' resale value due

to the perceived safety risk.

     Plaintiffs filed an original complaint and three amended

complaints in the circuit court of Cook County. The circuit court,

upon Suzuki's successive section 2--615 motions (735 ILCS 5/2--615

(West 1994)), dismissed each of the complaints for failure to state

a claim upon which relief may be granted. This appeal arises from

the dismissal of the third amended complaint, which contained

counts alleging breach of express and implied warranties, violation

of consumer fraud statutes, and common law fraud.

     On appeal, the appellate court first applied conflict of law

principles to determine which law applied to the plaintiffs from

Illinois, Pennsylvania and New Jersey. Using the most significant

relationship test, the court found that Pennsylvania law applied to

the claims of the Pennsylvania plaintiffs, and that Illinois law

applied to the plaintiffs from Illinois and New Jersey.

     The appellate court reinstated the express warranty count,

finding that various statements of Suzuki could have been a "basis

of the bargain." The court then affirmed the dismissal of the

implied warranty count under Illinois law because the complaint

failed to sufficiently allege facts constituting privity between

plaintiffs and Suzuki. Observing that Pennsylvania law does not

require privity for an action for breach of implied warranty, the

court nevertheless held that the count based on breach of the

implied warranty of fitness for a particular purpose was properly

dismissed under Pennsylvania law because the complaint did not

allege how the plaintiffs relied on Suzuki's skill or expertise in

choosing to purchase a Samurai. In respect to the count alleging

breach of the implied warranty of merchantability under

Pennsylvania law, the appellate court found that the excessive

safety risk made the vehicle unfit for its ordinary use and

reinstated this count.

     The appellate court next addressed plaintiffs' allegations of

fraud. The court reinstated the Illinois consumer fraud counts,

though it did rule that the consumer fraud count could not be based

on certain statements by Suzuki that it deemed mere "puffery." In

addition, the appellate court found that the complaint failed to

state a claim under the Pennsylvania consumer fraud statute because

it did not allege that the plaintiffs purchased or leased the

Samurai "primarily for personal, family or household" use, as

required by statute. 73 Pa. Cons. Stat. §201--9.2(a) (1993).

     The appellate court affirmed the dismissal of all common law

fraud counts, under both Pennsylvania and Illinois law, finding

that most of the allegedly fraudulent statements were not pled with

sufficient specificity and particularity. The court additionally

ruled that while the statements made by local Suzuki dealers were

alleged with sufficient specificity and particularity, the

complaint failed to adequately plead an agency relationship between

Suzuki and the local dealers and thus the statements could not be

attributed to Suzuki.

                                 ANALYSIS

     When the legal sufficiency of a complaint is challenged by a

section 2--615 motion to dismiss, all well-pleaded facts in the

complaint are taken as true and a reviewing court must determine

whether the allegations of the complaint, when interpreted in the

light most favorable to the plaintiff, are sufficient to establish

a cause of action upon which relief may be granted. DiBenedetto v.

Flora Township, 153 Ill. 2d 66, 69-70 (1992). Since plaintiffs

chose to amend each previously dismissed complaint, any error

regarding their dismissal is waived and we consider only the

sufficiency of the third and final amended complaint. Foxcroft

Townhome Owners Ass'n v. Hoffman Rosner Corp., 96 Ill. 2d 150, 155

(1983). In this appeal we thus address whether plaintiffs' third

amended complaint adequately stated: (1) a claim for UCC breach of

express or implied warranty under Illinois or Pennsylvania law; (2)

a claim of common law fraud under Illinois or Pennsylvania law; and

(3) a claim under the Illinois Consumer Fraud Act. Neither party

has appealed the appellate court's determination of the applicable

law or the appellate court's decision to affirm the dismissal of

the Pennsylvania consumer fraud count. Therefore those issues are

waived. 155 Ill. 2d R. 341(e)(7); Meyers v. Kissner, 149 Ill. 2d 1,

8 (1992).

     In applying Pennsylvania law to the UCC breach of warranty

count, we will cite to Pennsylvania's interpretation of the UCC

wherever possible. However, Pennsylvania courts have not ruled on

some of the UCC section 2--607 issues raised in this appeal.

Section 1--102 of the UCC states that one of the underlying

purposes and policies of the Act is "to make uniform the law among

the various jurisdictions." 810 ILCS 5/1--102(2)(c) (West 1994); 13

Pa. Cons. Stat. §1102(2)(c) (1984). In keeping with this policy,

both Illinois and Pennsylvania have primarily followed the majority

interpretation of the UCC. See, e.g., Collins Co. v. Carboline Co.,

125 Ill. 2d 498, 508 (1988); Cucchi v. Rollins Protective Services

Co., 377 Pa. Super. 9, 546 A.2d 1131 (1988). We will accordingly

rely on Illinois decisions consistent with majority UCC

interpretations where Pennsylvania courts have remained silent

respecting section 2--607.

                           I. Breach of Warranty

     Suzuki argues that plaintiffs cannot recover for a breach of

warranty under the UCC because the complaint did not adequately

allege that plaintiffs notified Suzuki of the breach as required by

article II, section 2--607, of the Uniform Commercial Code. 810

ILCS 5/2--607(3)(a) (West 1994); 13 Pa. Cons. Stat. §2607 (1984).

Plaintiffs counter that they were excused from giving direct notice

of breach of warranty because Suzuki had actual knowledge of the

breach and because notice was given by the filing of plaintiffs'

breach of warranty complaint.

     Section 2--607 of the UCC mandates that a "buyer must within

a reasonable time after he discovers or should have discovered any

breach notify the seller of breach or be barred from any remedy."

810 ILCS 5/2--607(3)(a) (West 1994); 13 Pa. Cons. Stat. §2607

(1984). A notification of breach of warranty is sufficient if it

lets the seller know that the particular "transaction is still

troublesome and must be watched." 810 ILCS Ann. 5/2--607, Uniform

Commercial Code Comment 4 (Smith-Hurd 1993); 13 Pa. Cons. Stat.

§2607, Uniform Commercial Code Comment 4 (1984).

     In general, buyers such as the instant plaintiffs must

directly notify the seller of the troublesome nature of the

transaction or be barred from recovering for a breach of warranty.

See 810 ILCS 5/1--201(26) (West 1994); 13 Pa. Cons. Stat. §1201(26)

(1984). There are instances, however, when a buyer can fulfill the

notice requirement without giving direct notice to the seller.

Direct notice is not required when (1) the seller has actual

knowledge of the defect of the particular product (Malawy v.

Richards Manufacturing Co., 150 Ill. App. 3d 549 (1986)); or (2)

the seller is deemed to have been reasonably notified by the filing

of the buyer's complaint alleging breach of UCC warranty (Perona v.

Volkswagen of America, Inc., 276 Ill. App. 3d 609 (1995)).

Plaintiffs argue that they properly alleged notice under either of

these two exceptions. In their complaint, plaintiffs alleged:

               "Any notice of breach of warranty that may have been

          required was provided to defendants or excused by each of

          the following separately and cumulatively:

                    a. The June 2, 1988 Consumers Union report of

               the Samurai's `not acceptable' rating;

                    b. The June, 1988 investigation by seven

               states' attorneys general resulting in defendants'

               agreement as set forth in paragraphs 34-36 above;

                    c. The commencement of the Pennsylvania

               action; and

                    d. The commencement of this action."

     We first consider plaintiffs' contention that they were

excused from giving direct notice of the breach of warranty because

Suzuki had actual knowledge of the Samurai's alleged safety risks.

It is uncontroverted that Suzuki was aware of the safety concerns

regarding the Samurai. Suzuki knew of the unfavorable report about

the Samurai issued by Consumers Union, as evidenced by its attempts

to counter that report with its own publicity. Moreover, Suzuki

entered settlement agreements with several states following

attorney general investigations of the Samurai's safety risks.

     However, Suzuki's generalized knowledge about the safety

concerns of third parties is insufficient to fulfill plaintiffs'

UCC notice requirement. While it is unnecessary to list specific

claims of breach of warranty in giving notice under section 2--607

(810 ILCS Ann. 5/2--607, Uniform Commercial Code Comment 4 (Smith-

Hurd 1993); 13 Pa. Cons. Stat. §2607, Uniform Commercial Code

Comment 4 (1984)), it is essential that the seller be notified that

this particular transaction is "troublesome and must be watched."

See, e.g., Malawy, 150 Ill. App. 3d 549. As Judge Learned Hand

stated regarding section 2--607's predecessor:

          "The notice `of the breach' required is not of the facts,

          which the seller presumably knows quite as well as, if

          not better than, the buyer, but of BUYER'S CLAIM that

          they constitute a breach." (Emphasis added.) American

          Manufacturing Co. v. United States Shipping Board

          Emergency Fleet Corp., 7 F.2d 565, 566 (2d Cir. 1925).

Thus, even if a manufacturer is aware of problems with a particular

product line, the notice requirement of section 2--607 is satisfied

only where the manufacturer is somehow apprised of the trouble with

the particular product purchased by a particular buyer. See Malawy,

150 Ill. App. 3d 549 (actual knowledge satisfied notice requirement

where seller hospital removed defective medical device from

plaintiff); Crest Container Corp. v. R.H. Bishop Co., 111 Ill. App.

3d 1068 (1982) (actual knowledge satisfied notice requirement where

seller's employee visited plaintiff to "get to the bottom of why"

the product was malfunctioning); Overland Bond & Investment Corp.

v. Howard, 9 Ill. App. 3d 348 (1972) (actual knowledge satisfied

notice requirement where the car was towed to the seller's auto

dealership and seller's employees were told that the car needed

major repairs).

     Plaintiffs' complaint alleged that Suzuki received notice of

the Samurai's safety problems through information received from

newspapers, magazines, and various third parties, all of which was

generalized information concerning the Samurai product line. The

complaint does not allege that Suzuki had actual knowledge of the

alleged breach of the particular products purchased by the named

plaintiffs in this lawsuit. Thus, plaintiff's allegation of actual

knowledge was insufficient to allege notice.

     We next address plaintiffs' contention that Suzuki was deemed

to be notified of the breach of warranty upon the filing of

plaintiffs' complaint. Initially, we note that, in determining

whether notice of breach of warranty is adequate under the UCC,

courts divide plaintiffs into three categories: (1) merchant buyers

(see Board of Education v. A, C, & S, Inc., 131 Ill. 2d 428

(1989)); (2) consumer buyers who did not suffer personal injuries

(see Perona, 276 Ill. App. 3d 609); and (3) consumer buyers who did

suffer personal injuries (see Goldstein v. G.D. Searle & Co., 62

Ill. App. 3d 344 (1978); Bednarski v. Hideout Homes & Realty, Inc.,

709 F. Supp. 90 (M.D. Pa. 1988)). Only a consumer plaintiff who

suffers a personal injury may satisfy the section 2--607 notice

requirement by filing a complaint stating a breach of warranty

action against the seller. Accord Goldstein, 62 Ill. App. 3d 344;

Bednarski, 709 F. Supp. 90. The reason for this distinction is that

where the breach has not resulted in personal injury, the UCC

indicates a preference that the breach be cured without a lawsuit.

Since the instant plaintiffs did not allege that they suffered any

personal injuries as a result of the Samurai's alleged roll-over

risk, the section 2--607 notice requirement was not fulfilled by

filing a breach of warranty complaint. Perona, 276 Ill. App. 3d

609.

     Since plaintiffs failed to allege direct notice to Suzuki and

since plaintiffs may not rely upon either exception to the direct

notice requirement, plaintiffs' complaint did not satisfy the

section 2--607 notice requirement. That failure to allege

sufficient notice is fatal to plaintiffs' breach of warranty

claims. 810 ILCS 5/2--607(3) (West 1994); 13 Pa. Cons. Stat. §2607

(1984); Board of Education, 131 Ill. 2d at 462-63; Williams v. West

Penn Power Co., 313 Pa. Super. 461, 460 A.2d 278 (1983). Thus, we

reverse the appellate court's finding that plaintiffs adequately

pled notice and hold that the breach of warranty counts in

plaintiffs' complaint were properly dismissed by the circuit court.

                                 II. Fraud

     We next consider the appellate court's rulings regarding the

fraud counts in plaintiffs' complaint. In the complaint, plaintiffs

contend that Suzuki committed common law fraud and statutory

consumer fraud by: (1) selling the Samurai to consumers; (2)

placing advertisements in magazines and sales brochures; (3)

providing driving guidelines in manuals accompanying each Samurai;

(4) issuing press releases responding to reports that the Samurai

was unsafe; (5) making statements through local Suzuki dealers; and

(6) concealing material facts regarding the Samurai's safety risks.

The circuit court dismissed the common law fraud counts and the

appellate court affirmed, finding that the complaint lacked

sufficient specificity and particularity. The appellate court

likewise affirmed the dismissal of the Pennsylvania consumer fraud

count because the complaint failed to allege that the Samurai was

purchased "primarily for personal, family or household purposes,"

as required by the Pennsylvania statute. 73 Pa. Cons. Stat. §201--

9.2(a) (1993). However, the appellate court found that plaintiffs'

complaint stated a cause of action under the Illinois Consumer

Fraud Act.

                            A. Common Law Fraud

                      1. Fraudulent Misrepresentation

      Suzuki argues that the plaintiffs' common law fraud counts

based on specific representations were properly dismissed because

the complaint lacked both particularity and specificity. We agree.

     The elements of common law fraud are: (1) a false statement of

material fact; (2) defendant's knowledge that the statement was

false; (3) defendant's intent that the statement induce the

plaintiff to act; (4) plaintiff's reliance upon the truth of the

statement; and (5) plaintiff's damages resulting from reliance on

the statement. Board of Education, 131 Ill. 2d at 452; Gibbs v.

Ernst, 538 Pa. 193, 210, 647 A.2d 882, 889 (1994). A successful

common law fraud complaint must allege, with specificity and

particularity, facts from which fraud is the necessary or probable

inference, including what misrepresentations were made, when they

were made, who made the misrepresentations and to whom they were

made. Board of Education, 131 Ill. 2d at 457; Pa. R. Civ. P.

1019(b); Martin v. Lancaster Battery Co., 530 Pa. 11, 18, 606 A.2d

444, 448 (1992).

     We first address plaintiffs' allegations that Suzuki made

fraudulent misrepresentations in magazine advertisements, sales

brochures, new car manuals, and publicity issued in response to

reports that the Samurai was unsafe. These allegations are

inadequate to plead fraud because the complaint fails to state

which, if any, of the plaintiffs heard these representations and

relied on them. These allegations were not pled with specificity

and particularity. Board of Education, 131 Ill. 2d at 457; Pa. R.

Civ. P. 1019(b); Martin v. Lancaster Battery Co., 530 Pa. 11, 18,

606 A.2d 444, 448 (1992). Thus, the appellate court did not err in

affirming the circuit court's dismissal of the counts in fraudulent

misrepresentation based on magazine advertisements, sales

brochures, new car manuals, and publicity released by Suzuki.

     We next address plaintiffs' allegations that statements made

by salesmen at local Suzuki dealers constituted fraud by Suzuki.

These statements were alleged with sufficient specificity in that

the complaint set forth what the statement was, when it was made,

who made it, and to whom it was made. Board of Education, 131 Ill.

2d at 457; Pa. R. Civ. P. 1019(b); Martin, 530 Pa. at 18-19, 606

A.2d at 448. Plaintiffs' complaint would therefore adequately state

a claim for common law fraud if these statements were sufficiently

alleged to have been made by Suzuki. However, the statements were

not made by Suzuki but by Suzuki dealers and therefore cannot be

the basis of a common law fraud count against Suzuki unless

plaintiffs have adequately alleged that the dealers were the agents

of Suzuki. A complaint relying on agency must plead facts which, if

proved, could establish the existence of an agency relationship. It

is insufficient to merely plead the legal conclusion of agency.

Knapp v. Hill, 276 Ill. App. 3d 376, 382 (1995); Clayton v.

McCullough, ___ Pa. ___, ___, 670 A.2d 710, 713 (1996). 

     Plaintiffs, in their complaint, alleged that they "purchased

their vehicles from authorized Suzuki dealers, who were agents of

defendants," and further alleged that certain named plaintiffs

"understood" the local Suzuki dealers to be agents of Suzuki. Such

allegations alone are mere legal conclusions and thus insufficient

to plead agency because they contain no facts to support a finding

that the local Suzuki dealers had actual or apparent authority to

act on Suzuki's behalf. See Washington v. Courtesy Motor Sales,

Inc., 48 Ill. App. 2d 380, 383 (1964) ("the term `Authorized ***

Dealer' is in the nature of a trade-mark sign, which is used by

independent dealers [citation] and means nothing more than a dealer

who sells [those] products").

     First, we note that the complaint is devoid of any facts to

support actual agency authority, either express or implied (see

Progress Printing Corp. v. Jane Byrne Political Committee, 235 Ill.

App. 3d 292, 308 (1992); Reifsnyder v. Dougherty, 301 Pa. 328, 152

A.2d 98 (1930)), or apparent authority (see Gilbert v. Sycamore

Municipal Hospital, 156 Ill. 2d 511, 523 (1993); Reifsnyder, 301

Pa. 328, 152 A. 98). Specifically, plaintiffs have not alleged in

their complaint that Suzuki expressly gave authority to the

individual dealers to bind them to statements made regarding the

Samurai's safety. Nor did plaintiffs allege that the position of

the dealers inherently gave them implied authority to act on behalf

of Suzuki. Rather, the complaint merely stated that the dealers

were "authorized Suzuki dealers." This, without more, is merely an

allegation that the dealers were given permission to sell Suzuki

vehicles. It does nothing to support a claim that the dealers had

implied authority from Suzuki sufficient to impose liability on

Suzuki for fraudulent statements made by the dealers. See Spiegel

v. Sharp Electronics Corp., 125 Ill. App. 3d 897, 900 (1984) ("No

[agency] relationship exists between a supplier and a retailer

which simply and only sells merchandise bearing the supplier's

brand name").

     In addition, plaintiffs did not adequately allege apparent

agency. Other than alleging that the dealers were "authorized,"

plaintiffs made no allegations about how Suzuki held out the

dealers as their agents. For instance, plaintiffs did not allege

that the dealers were required or requested by Suzuki to display

the Suzuki logos upon "signs, literature, products, brochures, and

plaques" within the dealerships. Malmberg v. American Honda Motor

Co., 644 So. 2d 888, 891 (Ala. 1994). Nor did plaintiffs allege

that Suzuki held out the dealers as their agents by requiring

dealer employees to wear a uniform with a Suzuki logo or by

requiring dealership employees to be trained by Suzuki. See

O'Banner v. McDonald's, No. 79547, slip op. at 5 (1996) (Bilandic,

C.J., dissenting) (discussing facts relevant to apparent agency

issue regarding a franchisee). In short, plaintiffs have alleged no

facts to support a claim that Suzuki held out the local dealers as

Suzuki's agents, thus giving them apparent authority.

     In so ruling, we are not stating that an authorized dealer can

never be an agent of the manufacturer. Rather, we find that in

Illinois, where fact pleading is required, this complaint is

insufficient. Knox College v. Celotex Corp., 88 Ill. 2d 407, 424

(1981). Therefore, we affirm the dismissal of plaintiffs' common

law fraud count based on statements made by local Suzuki dealers.

                         2. Fraudulent Concealment

     In their complaint, plaintiffs further alleged that Suzuki

committed fraud by failing to disclose its knowledge of the

Samurai's safety risks. In order to state a claim for fraudulent

concealment, a plaintiff must allege that the defendant concealed

a material fact when he was under a duty to disclose that fact to

plaintiff. Lidecker v. Kendall College, 194 Ill. App. 3d 309, 314

(1990); Wilson v. Donegal Mutual Insurance Co., 410 Pa. Super. 31,

40-41, 598 A.2d 1310, 1315-16 (1991). A duty to disclose a material

fact may arise out of several situations. First, if plaintiff and

defendant are in a fiduciary or confidential relationship, then

defendant is under a duty to disclose all material facts. Kurti v.

Fox Valley Radiologists, Ltd., 124 Ill. App. 3d 933, 938 (1984);

City of Harrisburg v. Bradford Trust Co., 621 F. Supp. 463, 473

(M.D. Pa. 1985). Second, a duty to disclose material facts may

arise out of a situation where plaintiff places trust and

confidence in defendant, thereby placing defendant in a position of

influence and superiority over plaintiff. Kurti, 124 Ill. App. 3d

at 938; City of Harrisburg, 621 F. Supp. at 473. This position of

superiority may arise by reason of friendship, agency, or

experience. Kurti, 124 Ill. App. 3d at 938; City of Harrisburg, 621

F. Supp. at 473.

     Plaintiffs, in their complaint, failed to state a claim for

common law fraudulent concealment because they failed to adequately

allege that Suzuki had a duty to disclose its knowledge of the

Samurai's safety risks. Lidecker, 194 Ill. App. 3d at 314; Wilson,

410 Pa. Super. at 41, 598 A.2d at 1316. Regarding the relationship

between plaintiffs and Suzuki, the complaint merely alleged that

plaintiffs had purchased a Samurai from an authorized Suzuki

dealer, and that Suzuki manufactured and distributed the Samurai.

Nowhere in the complaint did plaintiffs sufficiently allege that

they were in a confidential or fiduciary relationship with Suzuki

or that Suzuki was in a position of superiority over them. Without

such allegations, plaintiffs' complaint did not allege a duty to

disclose material facts which could give rise to a claim for common

law fraudulent concealment. Knox College, 88 Ill. 2d at 424.

Accordingly, the count of common law fraudulent concealment was

properly dismissed by the trial court.

                      B. Illinois Consumer Fraud Act

     We now address whether plaintiffs' complaint stated a valid

claim under the Illinois Consumer Fraud Act. The elements of a

claim under the Illinois Consumer Fraud Act (815 ILCS 505/2 (West

1994)) are: (1) a deceptive act or practice by defendant; (2)

defendant's intent that plaintiff rely on the deception; and (3)

that the deception occurred in the course of conduct involving

trade and commerce. Siegel v. Levy Organization Development Co.,

153 Ill. 2d 534, 542 (1992). Plaintiff's reliance is not an element

of statutory consumer fraud (see Harkala v. Wildwood Realty, Inc.,

200 Ill. App. 3d 447, 453 (1990)), but a valid claim must show that

the consumer fraud proximately caused plaintiff's injury (see

Wheeler v. Sunbelt Tool Co., 181 Ill. App. 3d 1088, 1109 (1989)).

Furthermore, a complaint alleging a violation of consumer fraud

must be pled with the same particularity and specificity as that

required under common law fraud. People ex rel. Hartigan v. E&E

Hauling, Inc., 153 Ill. 2d 473, 492 (1992).

     First, we address whether plaintiffs adequately pled statutory

consumer fraud based upon statements by local Suzuki dealers. As

with common law fraud discussed above, the complaint was

insufficient to state a claim of statutory consumer fraud based on

statements of local Suzuki dealers because the complaint did not

adequately plead agency between Suzuki and the local dealers.

Accordingly, we reverse the appellate court insofar as it

reinstated any of the Suzuki consumer fraud counts based on

statements by local dealers.

     Second, we address whether the complaint adequately pled a

consumer fraud violation based on statements made directly by

Suzuki. Plaintiffs can recover damages under the Consumer Fraud Act

only for injuries that were proximately caused by the alleged

consumer fraud. See Stehl v. Brown's Sporting Goods, Inc., 236 Ill.

App. 3d 976, 981 (1992). Accordingly, plaintiffs can state a valid

claim of consumer fraud only where premised upon statements made

prior to their dates of purchase. In that the counts of consumer

fraud were based upon statements made after the dates of purchase

alleged in the complaint, they were properly dismissed.

     Third, we turn to the remaining counts of statutory consumer

fraud, i.e., those based on statements made prior to the dates of

purchase. Plaintiffs contended that the owner's manual accompanying

each new Samurai contained a representation violative of the

Illinois Consumer Fraud Act. Plaintiffs' complaint alleged that the

owner's manual provided " `guidelines' for safe `on-pavement

driving' " and that "[t]hese guidelines were provided because

[Suzuki] knew that plaintiffs and members of the Class would `often

use [the] vehicle on paved roads.' " In other paragraphs of the

complaint, plaintiffs alleged that Suzuki falsely represented to

plaintiffs that the Samurai was "safe for on and off road use."

     These allegations, however, were insufficient to state a claim

under the Illinois Consumer Fraud Act. Plaintiffs' complaint fails

because it did not allege with specificity how the manual's

guidelines were false or deceptive. Specifically, the complaint

failed to allege how the Samurai was unsafe where a driver followed

the manual's guidelines. Without such specificity and

particularity, the complaint fails to state a violation of consumer

fraud. E&E Hauling, 153 Ill. 2d at 492. Accordingly, we reverse the

appellate court's reinstatement of this count, which had been

dismissed by the circuit court.

     In their complaint, plaintiffs also alleged that Suzuki

committed consumer fraud by providing misinformation to Car &

Driver magazine. In January 1986, Car & Driver published a review

of the Samurai, allegedly based on information provided by Suzuki.

In the article, the reviewer stated: "Mindful of the rollover

problems associated with other vehicles of this type, the Suzuki

engineers built extensive passenger protection into the convertible

version of the Samurai." Plaintiffs contend in their complaint that

this information was false, alleging that, "in the event of a

rollover, the Samurai provides little, if any, protection for the

occupants of the vehicle in that it has improper side-door strength

and roof-crush resistance."

     In light of the fact that the Illinois Consumer Fraud Act

should be liberally construed (Law Offices of William J. Stogsdill

v. Cragin Federal Bank for Savings, 268 Ill. App. 3d 433, 436

(1995)) and that, in reviewing the legal adequacy of a complaint,

we must interpret the allegations of the complaint in the light

most favorable to the plaintiff (DiBenedetto, 153 Ill. 2d at 69-

70), we find that plaintiffs' allegations regarding Suzuki's

representation to Car & Driver magazine adequately stated a cause

of action for consumer fraud.

     First, plaintiffs' complaint adequately pled a deceptive act

or practice by Suzuki. Specifically, plaintiff alleged that Suzuki

represented to Car & Driver that the Samurai had special safety

features to protect passengers involved in a roll-over accident and

that this information was false since the Samurai had improper

side-door strength and roof-crush resistance.

     Second, plaintiffs alleged that Suzuki intended purchasers to

rely on this statement, which they claim is evident from the very

nature of the representations themselves. Suzuki made statements to

a magazine planning to publish a review of the Samurai. Suzuki

undoubtedly knew that many prospective purchasers would read the

review and that information furnished to the magazine by Suzuki

would be one basis of the published review.

     Third, plaintiffs alleged that the statements were made in

trade or commerce. Fourth, plaintiffs have alleged proximate cause,

as required. They allege that their purchases occurred after the

allegedly fraudulent statements, and the complaint contains no

facts showing an intervening cause that would break the chain of

proximate causation. Furthermore, the required allegation of

proximate cause is minimal since that determination is best left to

the trier of fact. Petrauskas v. Wexenthaller Realty Management,

Inc., 186 Ill. App. 3d 820, 832 (1989). We thus affirm the

appellate court's decision to reinstate the consumer fraud count

based on Suzuki's misinformation to Car & Driver magazine.

     Lastly, we consider the counts alleging that Suzuki

fraudulently concealed material facts from plaintiffs. First,

plaintiffs alleged that Suzuki failed to inform consumers of the

Samurai's roll-over tendency, which was "an improper concealment,

suppression, or omission of a material fact, in violation of the

Consumer Fraud Acts." Plaintiffs further alleged that Suzuki

committed consumer fraud based on the mere sale of the Samurai

without disclosure of the safety risks, in that "[t]he offering for

sale *** of a consumer product *** constitutes a representation ***

that the product is reasonably safe for its intended use."

     An omission or concealment of a material fact in the conduct

of trade or commerce constitutes consumer fraud. 815 ILCS 505/2

(West 1994); Mackinac v. Arcadia National Life Insurance Co., 271

Ill. App. 3d 138, 141 (1995). A material fact exists where a buyer

would have acted differently knowing the information, or if it

concerned the type of information upon which a buyer would be

expected to rely in making a decision whether to purchase.

Mackinac, 271 Ill. App. 3d at 141. Furthermore, it is unnecessary

to plead a common law duty to disclose in order to state a valid

claim of consumer fraud based on an omission or concealment. Celex

Group, Inc. v. Executive Gallery, Inc., 877 F. Supp. 1114, 1129

(N.D. Ill. 1995).

     We find that plaintiffs adequately pled a consumer fraud

violation based on a material omission by Suzuki. Plaintiffs

alleged that Suzuki was aware of the Samurai's safety problems,

including its tendency to roll over and its inadequate protection

for passengers. Plaintiffs further alleged that Suzuki failed to

disclose these defects. Finally, plaintiffs alleged that the safety

problems of the Samurai were a material fact in that they would not

have purchased the vehicles if Suzuki had disclosed the Samurai's

safety risk. Accordingly, we affirm the appellate court insofar as

it reinstated the count alleging that Suzuki committed consumer

fraud by concealing material facts about the Samurai's safety

risks.

                                CONCLUSION

     To summarize, we find that the counts based in UCC breach of

warranty and common law fraud were properly dismissed. We reinstate

the Illinois consumer fraud count, but only insofar as it was based

on the 1986 Car & Driver article or on Suzuki's concealment of

material facts regarding the Samurai's safety risk. For these

reasons, we affirm in part and reverse in part the judgments of the

appellate and circuit courts, and remand this cause to the circuit

court.

Appellate court judgment affirmed in part

                                                    and reversed in part;

                                  circuit court judgment affirmed in part

                                                    and reversed in part;

                                                          cause remanded.

                                                                         

     JUSTICE HARRISON, concurring in part and dissenting in part:

     Although most of the majority's analysis is correct, I

disagree its conclusion that plaintiffs did not adequately plead

that the various Suzuki dealers were Suzuki's agents. The complaint

specifically alleged that the vehicles were purchased from

"authorized Suzuki dealers" who were "the actual and apparent

agents of [Suzuki]." At this point I do not know what else needed

to be said. Under the Code of Civil Procedure, "[n]o pleading is

bad in substance which contains such information as reasonably

informs the opposite party of the nature of the claim or defense

which he or she is called upon to meet." 735 ILCS 5/2--612(b) (West

1992). The allegations here accomplished that purpose. Additional

details, even if plaintiffs had them, would have contributed

little. The complaint, as it stood, supplied ample information for

defendants to prepare their answer.

     I fail to see, moreover, how the court could reasonably expect

plaintiffs to be any more specific at this stage of the

proceedings. The situation here is analogous to the one present in

Gilbert v. Frank, 233 Ill. App. 3d 372 (1992), a medical

malpractice action against a hospital and one of its emergency room

physicians. Rejecting the hospital's argument that the complaint

did not adequately allege that the physician was its apparent

agent, the appellate court held that

          "precision pleading should not be required if knowledge

          of the pertinent facts is within the control of the

          defendant rather than the plaintiff. (Holton v.

          Resurrection Hospital (1980), 88 Ill. App. 3d 655, 658.)

          In the case at bar, the hospital would have had knowledge

          about the nature of its relationship with [the

          physician], but it is highly unlikely that plaintiff

          would have had access to this information when she filed

          her complaint. Therefore we do not believe it is unfair

          to the hospital to construe the allegation that [the

          physician] was its agent to be an allegation that he was

          either an actual or apparent agent. We conclude that

          plaintiff adequately alleged in count II that [the

          physician] was an apparent agent of the hospital and

          reject the hospital's contrary contention." Gilbert v.

          Frank, 233 Ill. App. 3d at 377.

     Our court subsequently granted a petition for leave to appeal

in the case and expressly agreed with the appellate court's

reasoning and result on this issue. Gilbert v. Sycamore Municipal

Hospital, 156 Ill. 2d 511, 527 (1993). This result is consistent

with the principal that the existence of an agency relationship is

a question of fact for the trier of fact and that "[t]o require

plaintiffs, without benefit of discovery, to include in their

complaint sufficient factual detail to permit a determination of

these questions from the face of the complaint is both unrealistic

and unnecessary." Sherman v. Field Clinic, 74 Ill. App. 3d 21, 25

(1979).

     Even if I could put these considerations aside and accept that

the allegations in the body of the complaint were too conclusory,

by themselves, to comply with our pleading requirements, the

majority's analysis would still be unpersuasive. In declaring the

agency allegations deficient, the majority overlooks the exhibits

that were attached to the plaintiffs' complaint. Where, as here,

exhibits are incorporated into a pleading, the facts set forth in

those exhibits have the same effect as if they had been alleged in

the body of the pleading itself. See E.A. Cox Co. v. Road Savers

International Corp., 271 Ill. App. 3d 144, 149 (1995). Accordingly,

the facts contained in the exhibits must be considered alongside

the allegations of the complaint in determining whether the

pleading adequately states a cause of action. See Payne v. Mill

Race Inn, 152 Ill. App. 3d 269, 275 (1987).

     The exhibits to plaintiffs' third-amended complaint indicate

that Suzuki dealerships are not simply independent merchants who

buy a product from a manufacturer and resell it to third parties.

The dealerships sell the vehicles on Suzuki's behalf, and the

corporation receives no payment for its vehicles until the

dealerships have managed to sell them. Suzuki has also made the

dealerships responsible for handling the warranties extended by the

corporation to its customers. The owner's manual furnished to

consumers by Suzuki for the vehicle at issue here provides that any

questions are to be referred to the dealer, not Suzuki, and that if

warranty service is required, the vehicle should be taken to the

dealer. These facts clearly suggest that the dealers do act, in

every meaningful sense, as the agents of Suzuki for the purpose of

selling and servicing Suzuki vehicles.

     If, despite all this, the court still believes that

plaintiffs' complaint is deficient, it is time for it to reassess

its pleading requirements. The General Assembly has declared that

pleadings must be construed liberally with the ultimate goal of

doing substantial justice between the parties (735 ILCS 5/2--603(c)

(West 1992)), and we are bound to adhere to this principle.

Instead, the majority persists in refusing to even acknowledge that

the principle exists. See Anderson v. Vanden Dorpel, 172 Ill. 2d

399, 417-20 (1996) (Harrison, J., dissenting). Although my

colleagues purport to rely on the old doctrine of "fact pleading"

to justify their position, I am afraid that what is really at work

here is a fundamental opposition to plaintiffs' claims. This is

unfair and contrary to the law. The court should not subvert

procedural requirements in order to effectuate its own private

version of tort reform.

     I would reinstate the Illinois consumer fraud count based on

representations by local Suzuki dealers as well as on the

concealment of material facts by Suzuki itself. I would likewise

reinstate plaintiffs' common law fraud count to the extent it is

based on representations by local Suzuki dealers.

     JUSTICE McMORROW, also concurring in part and dissenting in

part:

     I agree with the majority that the circuit court correctly

dismissed the common law fraud counts for failure to state a cause

of action. I also believe that the majority properly reinstates

that part of the Illinois consumer fraud count relating to Suzuki's

concealment of the Samurai's safety risks. However, I find that the

complaint adequately alleges that Suzuki knew its vehicles were

"troublesome and must be watched." Accordingly, I would affirm the

appellate court's reinstatement of the breach of warranty claims.

     As the majority observes, both the Illinois and Pennsylvania

Commercial Codes provide that "[a]ny affirmation of fact or promise

made by the seller to the buyer which relates to the goods and

becomes part of the basis of the bargain creates an express

warranty that the goods shall conform to the affirmation or

promise." 810 ILCS 5/2--313(1)(a) (West 1994); 13 Pa. Cons. Stat.

§2313(a)(1) (1984). If the goods fail to conform to the affirmation

or promise, the seller may be held accountable for breach of

warranty. In order to maintain such an action, a "buyer must within

a reasonable time after he discovers or should have discovered any

breach notify the seller of breach or be barred from any remedy."

810 ILCS 5/2--607(3)(a) (West 1994). There are, however, two

recognized exceptions to giving notice. "Direct notice is not

required when (1) the seller has actual knowledge of the defect of

the particular product (Malawy v. Richards Manufacturing Co., 150

Ill. App. 3d 549 (1986)); or (2) the seller is deemed to have been

reasonably notified by the filing of the buyer's complaint alleging

breach of UCC warranty (Perona v. Volkswagen of America, Inc., 276

Ill. App. 3d 609 (1995))." Slip op. at 5.

     In this case, the complaint clearly alleges that Suzuki had

actual knowledge of a defect in its vehicles. The majority itself

notes: "It is uncontroverted that Suzuki was aware of the safety

concerns regarding the Samurai. Suzuki knew of the unfavorable

report about the Samurai issued by Consumers Union, as evidenced by

its attempts to counter that report with its own publicity.

Moreover, Suzuki entered [into] settlement agreements with several

states following attorney general investigations of the Samurai's

safety risks." Slip op. at 5-6.

     Nonetheless, the majority holds that "it is essential that the

seller be notified that THIS PARTICULAR TRANSACTION is `troublesome

and must be watched.' " (Emphasis in original.) Slip op. at 6,

quoting 810 ILCS Ann. 5/2--607, Uniform Commercial Code Comment 4

(Smith-Hurd 1993). Thus, because the plaintiffs here did not allege

that Suzuki was aware that there was trouble with each and every

one of plaintiffs' vehicles, the majority finds that Suzuki did not

have actual knowledge of the defect. Surprisingly, the court

reaches this conclusion even though plaintiffs alleged that Suzuki

had knowledge that all of its vehicles suffered the same design

defect.

     As support for its holding, the majority relies almost

exclusively on the appellate court decision in Malawy v. Richards

Manufacturing Co., 150 Ill. App. 3d 549 (1986). That case, however,

is not only inapposite to the case at bar, it also does not stand

for the proposition for which it is cited; namely, that a seller

must be notified of trouble with every particular transaction.

     In Malawy, a single plaintiff suffered a fracture to his right

hip. As part of his surgery, doctors installed a metal plate into

the femur shaft fracture. The plate later broke, resulting in at

least five more surgeries. Plaintiff sued the hospital (as the

seller) as well as the manufacturer of the plate under a breach of

warranty theory. The manufacturer argued, however, that it did not

receive notice of the plaintiff's warranty claim. The appellate

court disagreed.

     First, the court held that the seller, St. Elizabeth's

Hospital, had actual notice of the defect because its doctors

removed the broken plate.  Second, the court noted that the

manufacturer was in fact "notified of the break of the plate

immediately after plaintiff [who originally sued the wrong

manufacturer] obtained knowledge that it was the manufacturer of

the plate." Malawy, 150 Ill. App. 3d at 561. Importantly, nowhere

in Malawy did the court ever hold that knowledge of a particular

transaction is a prerequisite to satisfying the notice

requirements. It just so happened that in Malawy there was a single

buyer and a single product. As a result, once the seller learned of

the broken plate, the seller necessarily became aware that there

was trouble with that particular transaction. That circumstance,

however, is far different from the factual situation presented

here.

     In contrast to Malawy, this case involves a nationwide class

action against the manufacturer of a product claimed to have been

defectively designed. Specifically, plaintiffs allege that a defect

in the Samurai's design caused all of the vehicles to roll over

during turns or evasive maneuvers. Unlike a manufacturing defect,

which occurs when one or more products are defectively made, a

design defect renders all of the products defective all of the

time. Consequently, if a manufacturer has actual knowledge that

one of its products suffers a design defect, as opposed to a

manufacturing defect, it necessarily follows that the manufacturer

has knowledge that all of its products suffer that defect. In this

case, Suzuki had actual knowledge that the Samurai suffered a

design defect rather than a manufacturing defect. The majority

concedes as much, citing to the negative report issued by Consumers

Union as well as the attorney general investigations of the

Samurai's safety risks. Because Suzuki knew that its Samurai

suffered a design defect, it knew a fortiori that each and every

Samurai was defective. Contrary to the majority, I simply cannot

fathom how Suzuki can claim that it did not have knowledge of a

defect in each of its Samurais when in fact it had actual knowledge

of a defect in all of its Samurais.

     Finally, as noted above, plaintiffs seek to represent a class

consisting of all persons in the United States who have purchased

or leased a Samurai during the relevant time period. Putting Suzuki

on notice to the same defect in every Samurai would not only be

redundant, it would also likely prove impractical. What purpose

would be served in requiring such notice where it appears that

large quantities of the same defective product are at issue? What

purpose would be served in requiring such notice where there has

been a considerable number of complaints over a substantial period

of time, so much so that the attorney generals of several states

have intervened on consumers' behalf?

     Because I believe that plaintiffs' complaint adequately

alleges that Suzuki had actual knowledge of the defect, and because

I find Suzuki's other arguments regarding plaintiffs' claims for

breach of warranty lacking in merit, I would affirm the appellate

court's reinstatement of the breach of warranty count.

     For the foregoing reasons, I respectfully dissent in part.

     JUSTICE FREEMAN joins in this partial concurrence and partial

dissent.